UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM S. HILTS,
    Plaintiff                                   Civil Action No. 07-13564

v.

                                            District Judge Marianne O. Battani
                                            Magistrate Judge R. Steven Whalen

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff William Hilts brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be DENIED and Plaintiff's motion GRANTED, remanding this case for further administrative proceedings.

## PROCEDURAL HISTORY

On June 4, 2004, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset date of December 2, 2003 (Tr. 59). After the initial denial of

benefits, he made a timely request for an administrative hearing, held before Administrative Law Judge ("ALJ") Ethel Revels in Port Huron, Michigan (Tr. 269). Plaintiff, then represented by Frank M. Partipilo, testified, as did Vocational Expert ("VE") Barry Cynowa (Tr. 269-279, 279-288). On February 21, 2007, ALJ Revels determined that Plaintiff was not disabled (Tr. 23). On July 26, 2007, the Appeals Council denied review (Tr. 5-7). Plaintiff filed suit in this Court on August 24, 2007.

## BACKGROUND FACTS

Plaintiff, born July 26, 1954 was 52 when ALJ Revels issued her decision (Tr. 59). He dropped out of school in ninth grade and worked as an auto body repairer and chassis technician (Tr. 81, 117). Plaintiff alleges disability due to herniated discs, spondyosis of the cervical spine, and chronic obstructive pulmonary disease (COPD) (Tr. 76).

### A. Plaintiff's Testimony

Plaintiff testified to shooting back pain that radiated into his arms and left leg (Tr. 269). He estimated that he could sit for a maximum of 45 minutes and stand for 30 before experiencing discomfort, adding that pain precluded him for walking more than 150 to 200 feet or lifting more than five pounds (Tr. 270). Plaintiff stated that he took both Vicodin and Tramadol thrice-daily, reporting the side effect of drowsiness which "[s]ometimes" obliged him to nap (Tr. 272). He added that back pain prevented him from sleeping soundly at night, stating that he was unable to sleep for more than five hours at a time (Tr. 272).

Plaintiff estimated that on an average day, when taking medication, his back pain

created level six to seven pain on a scale of one to 10, but that he experienced level 10 pain without medication (Tr. 273). He testified that he typically arose at six or seven a.m., took his medication, sat, napped, and watched television, adding that his pain usually worsened during the course of the day (Tr. 273-274). He alleged that memory and concentrational problems prevented him from cooking, but acknowledged that he was able to take garbage to the curb by loading it onto a wagon and pulling it down the driveway (Tr. 275). He indicated that he was limited by arm and hand numbness in addition to long term back pain (Tr. 276).

Plaintiff denied formal education beyond ninth grade (Tr. 276). He alleged that pain interfered with his ability to focus, estimating that he experienced "bad days" (those in which he was totally incapacitated by pain) twice a week (Tr. 276-277). He reported that he did traction every day, but had declined to follow his doctors' advice to undergo neck surgery (Tr. 278). Plaintiff also noted that problems sitting and walking limited his ability to fish (Tr. 278).

**B. Medical Records**

**1. Treating Sources**

In May 2003, imaging studies of Plaintiff's spine showed "severe degenerative disc disease at C5/C6 and from L4 through S1," and "moderate to severe uncovertebral joint arthrosis" at C5/C6 and C6/C7 with otherwise "mild" findings (Tr. 118). In January 2004, John P. Mullally, M.D., noted that Plaintiff complained of a pinched nerve affecting his left arm, chronic fatigue, COPD, and a depressed mood (Tr. 173). Imaging studies performed

the same month showed "hyperinflation with flattening of the diaphragms compatible with chronic obstructive pulmonary disease" (Tr. 171). The next month, EMG testing showed mild left C7 radiculopathy (Tr. 168). Matthew J. Sciotti, M.D., recommending that Plaintiff continue to wear a cervical collar, prescribed Prednisone (Tr. 168). In March 2004, Plaintiff reported improved symptoms, demonstrating a "moderately" reduced right and left lateral rotation of the cervical spine (Tr. 166). Physical therapy discharge notes dated April 9, 2004 indicate that Plaintiff continued to experience muscle tightening, but was free of lower back pain (Tr. 162). Plaintiff completed an additional 11 sessions (Tr. 184). An April 30 summary states that Plaintiff was discharged after reaching a plateau (Tr. 184). A May 2004 MRI of the lumbar spine showed moderate biformaminal encroachment at L4-L5 and significant degenerative disc disease of the lumbar and thoracic spine (Tr. 158). Dr. Sciotti's June 2004 treating notes indicate that Plaintiff continued to complain of pain and numbness of the left shoulder and arm (Tr. 174).

In August 2004, neurosurgeon Daniel P. Elskens, M.D., finding marked degenerative changes in the cervical and lumbar spine, recommended a cervical diskectomy and fusion, observing that Plaintiff's lumbar spine condition was "not amenable to surgical treatment" (Tr. 150). Dr. Elskens opined that the recommended cervical disectomy would not "completely eliminate . . . symptoms," but would "protect his neck for the future" (Tr. 150). A September 2004 MRI of the thoracic spine showed multilevel biforaminal disc herniation with degenerative changes (Tr. 146). In August 2005, Plaintiff reported to Dr. Mullally that he was unable sit for more than an hour or perform house or yard work (Tr. 123). The same

month, Dr. Mullally completed a Physical Residual Functional Capacity Questionnaire[1] (Tr. 243). Noting Plaintiff's diagnosis of radiculopathy of the cervical, thoracic, and lumbar spine, Dr. Mullally opined that Plaintiff's impairments would last at least 12 months, rendering him incapable of even low stress work as a result of muscle spasms and reduced concentration (Tr. 244). The Assessment found further that Plaintiff was limited to walking one city block and sitting for 45 minutes (Tr. 245). Plaintiff's limitations also included the need for a sit/stand option, a preclusion on all lifting above 10 pounds with stooping, crouching, and climbing limited to rare occasions (Tr. 245-246). Plaintiff was precluded from all twisting (Tr. 246). Dr. Mullally concluded that Plaintiff's symptoms of radiculopathy would oblige him to miss more than four days of work each month (Tr. 246).

### 2. A Non-examining Source

A July 2004 Physical Residual Functional Capacity Assessment of Plaintiff's treating records by J. R. Bartone, M.D., found that Plaintiff retained the ability to carry 20 pounds occasionally and 10 frequently; the ability to stand, walk, or sit for six hours in an eight-hour workday; a limited ability to push or pull with the upper extremities but unlimited lower extremity abilities (Tr. 212). Dr. Bartone found that Plaintiff was able to balance on a *frequent* basis, but should be limited to *occasional* climbing, stooping, kneeling, crouching, and crawling (Tr. 213). The Assessment determined further that Plaintiff should be limited

---

[1] The same day, Dr. Mullally filled out two other questionnaires related specifically to Plaintiff's limitations as a result of cervical radiculopathy (Tr. 237-242) and lumbar radiculopathy (Tr. 248-253) finding essentially the same results as the above-cited material.

to *occasional* reaching and avoidance of concentrated exposure to vibration or heights, but found the absence of visual or communicative limitations (Tr. 214-215). An accompanying summation by Dr. Bartone notes that Plaintiff cared for his personal needs, prepared simple meals, made telephone calls, and continued to fish (Tr. 210). Dr. Bartone found that Plaintiff's "described functional limitations are somewhat inconsistent with the medical and non-medical evidence in file" (Tr. 210).

**C.     VE Testimony**

VE Barry Cynowa classified Plaintiff's past relevant work as an auto body repairer and chassis technician as skilled at the medium exertional level without transferable skills[2] (Tr. 117). The ALJ posed the following hypothetical question, taking into account Plaintiff's age, educational level, and work experience:

> "Assume . . . that our hypothetical claimant needs work that is in a relatively clean environment that does not require him to operate at cold or hot temperature extremes, that does not require more than occasional climbing of stairs and ramps, no climbing of rope, scaffolds or ladders, no work with vibratory tools, no work at hazardous heights or around dangerous machinery. Our hypothetical claimant also does suffer with some pain which I would rate as creating a moderate limitation in the ability to maintain concentration for extended periods, thereby limiting him to those simple repetitive type tasks or unskilled work. Our hypothetical claimant can walk six of eight hours, lift 10

---

[2]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

pounds frequently, 20 pounds occasionally, but does need a sit/stand option
that does not require sitting more than 45 minutes at a time or standing more
than 30 minutes at a time, and . . . stand and walk six of eight. If you assume
that, what jobs would our hypothetical claimant be vocationally qualified to
perform?"

(Tr. 280-281).

Given the above limitations, the VE found that the hypothetical individual could perform the light, unskilled jobs of a visual inspector (2,500 in the regional economy), small products assembler (5,750), and hand packager (5,750) (Tr. 281). The VE testified that a preclusion on overhead reaching would not impact the job numbers, but if the hypothetical were amended to disallow the repetitive use of the left arm, the individual would be unable to perform the assembling and packaging jobs (Tr. 282).

### D. The ALJ's Decision

ALJ Revel found that although Plaintiff's degenerative disc disease, chronic obstructive pulmonary disease, and hypertension were severe impairments based on the Regulations in 20 C.F.R. § 404.1520(c), none of the conditions met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation 4 (Tr. 17-18).

The ALJ determined that although Plaintiff was unable to perform his past relevant work, he retained the following residual functional capacity ("RFC"):

"simple repetitive, unskilled work at the light level of physical exertion. The
claimant can lift 10 pounds frequently and 20 pounds occasionally, requires a
sit/stand option at the workstation, cannot sit more than 4 hours at a time or
stand more than 30 minutes at a time, and can walk 6 of 8 hours. The claimant
requires work in a relatively clean environment with no cold or hot temperature
extremes and can occasionally climb stairs and ramps. The claimant cannot
climb ropes, scaffolds, or ladders and cannot work with vibratory tools, near

hazardous heights, or around dangerous machinery. Pain moderately limits the claimant's ability to maintain concentration for extended periods of time"

(Tr. 18).

Adopting the VE's job numbers *supra*, the ALJ found that Plaintiff could perform the work of an information clerk, small products assembler, and hand packager (Tr. 22).

The ALJ found Plaintiff's allegation of disability "not entirely credible," citing Dr. Elsken's September 2004 opinion that Plaintiff "appears to be here mostly just to get support for his disability," rather than to follow the recommendation to undergo a cervical discectomy and fusion (Tr. 20, 143). The ALJ also noted that in March 2004, Plaintiff reported decreased back pain (Tr. 20). She also a cited March 2004 physical therapy report which she construed as showing that Plaintiff continued to perform collision repair work despite claiming disability as of December 2003 (Tr. 20, 166, 190).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff argues first that the ALJ's credibility determination is tainted by her erroneous interpretation of both treating and consultive physicians' records. *Plaintiff's Brief* at 6-13, *Docket #9.* He also submits that the conclusion he could perform exertionally light work stands unsupported by substantial evidence. *Id*. at 13-16. On a related note, he contends that the hypothetical question did not include all of his relevant limitations, thus invalidating the VE's job findings. *Id.* at 16-19.

### A. Credibility

Although an ALJ's decision must be based on specific reasons for the findings of credibility, supported by substantial evidence in the record, *see Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); SSR 96-7p, as a rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson, supra,* 402 U.S. at 401. An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986).

In support of her finding that Plaintiff overstated his level of limitation, the ALJ noted that in March 2004, he reported an improved range of motion and diminished symptoms after taking medication (Tr. 19). She also cited April 2004 physical therapy discharge reports which noted that Plaintiff no longer experienced lower back pain (Tr. 20, 162). The ALJ

reasonably found that Plaintiff's claim of intractable back pain was undermined by his repeated refusal to undergo epidurals (Tr. 20, 134, 135).

The ALJ also had some basis to reject Dr. Mullally's finding that Plaintiff was disabled from all work (Tr. 20-21, 220, 244). Contrary to Plaintiff's argument that 20 C.F.R. §404.1527(d)(2) compels adoption of the treating physician's disability finding, the Regulation actually states that the ALJ must give "good reasons" for according less than controlling weight to a treating source. Further, in compliance with §404.1527(d)(2) the ALJ considered and discussed the length, frequency and nature of the treatment relationship, as well as its "consistency of the opinion with the record as a whole." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004). The ALJ reasonably rejected the physician's opinion by noting that it stood at odds with his own treating records showing a lesser degree of limitation.

However, the ALJ made a critical error in her credibility determination by relying on 2004 treatment and physical therapy records that she interpreted to indicate that Plaintiff continued to work full-time as a collision repairer at least three months beyond his "onset of disability" date (Tr. 190, 198). The report at Tr. 190, dated March 10, 2004, is a history/evaluation form that appears to have been filled out by a physical therapist, based on questions asked of the Plaintiff. In the section marked "employment," the "yes" box is checked, as is the box marked "full time." The physical therapist also wrote "collision repair, 6-8 hours, self-employed." A similar form at Tr. 198, dated March 15, 2004, indicates "full time" employment as a mechanic or body worker.

At Step One of the sequential analysis, the ALJ noted that "[t]here is some evidence in the record that suggests that the claimant, who is self-employed, was working beyond his alleged onset date" (Tr. 17). However, she gave Plaintiff "the benefit of the doubt" by performing "the full sequential evaluation process" (Tr. 17). Nevertheless, these treatment records were critical to the ALJ's adverse credibility determination.

There are several problems with the ALJ's use of these records. First, while they would, on their face, *seem* to support the conclusion that Plaintiff was working, their accuracy is questionable. Again, it appears that the Plaintiff himself did not fill out the form or write any comments on it. He has a 9th grade education. Did he understand the therapist to be asking about his current employment or his past employment? Unfortunately, the ALJ did not ask the Plaintiff about these records at the hearing or give him the opportunity to clarify them, but instead mentioned them for the first time in her written decision.

Moreover, these documents conflict with other parts of the record. For example, the Plaintiff's earnings record for 2004 (Tr. 67) indicates that he earned $545.00 for the entire year, a figure inconsistent with full-time employment. In addition, the ALJ found that the Plaintiff was limited to light work, a finding inconsistent with the ability to perform full-time auto body work, which the VE classified as medium work (Tr. 117).

There are simply too many unanswered questions about the accuracy of these records, and the ALJ gave them too much weight in her credibility determination, to validate them as

"substantial evidence."[3]  Given the Plaintiff's educational level, the fact that someone else appears to have filled out the forms, the inconsistencies between the forms and other parts of the record, and, perhaps most importantly, the Plaintiff's lack of opportunity to offer any explanation, it is necessary to remand this case for further hearing.

While the case must be remanded for the ALJ to reconsider her credibility determination, and to give the Plaintiff the opportunity to explain or clarify the physical therapy records, I will briefly address the other issues raised in this appeal.

**B.  Residual Functional Capacity**

Plaintiff challenges the ALJ's finding that he has the residual functional capacity for exertionally light work.  *Plaintiff's Brief* at 13-16.   He contends that the July 2004 non-examining evaluation adopted by the ALJ was performed without benefit of later imaging studies. *Id.* at 13.   Plaintiff submits that he is capable of only sedentary work.  *Id.*

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002).   "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account."

---

[3]I also disagree with the ALJ's conclusion that Dr. Elskens' November 2004 view that Plaintiff was only concerned about his disability claim and not about the a recommended surgery should be used to discount Plaintiff credibility (Tr. 20, 143).
First, when Dr. Elsken recommended a cervical discectomy to Plaintiff in August 2004, he acknowledged that "it is unlikely that it would completely eliminate his symptoms but hopefully . . . protect his neck for the future" (Tr. 150).  Plaintiff need not submit to a procedure which has little, if any chance of improving his present condition.  Further, Dr. Elsken's opinion that Plaintiff was more interested in the development of his DIB application than surgery, if true, is a perfectly reasonable concern  and does not by itself discredit his claims.

*Id.* (*quoting* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

In the present case, whether Plaintiff, 52 at the time of the hearing, can perform light work is critical since a finding that he could perform only sedentary work would generally direct a finding of disabled. "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if Plaintiff [closely approaching advanced age] has a residual functional capacity [] for only sedentary work, § 201.09, but not if his RFC is light. § 202.10." *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986); *Scales v. Commissioner of Social Sec.*, 1996 WL 343533, *2 (6th Cir. 1996).

The conclusion that Plaintiff retained the ability to perform a range of light work is supported by substantial evidence. Plaintiff revisits the argument that the ALJ erred in rejecting Dr. Mullally's opinion. However, the ALJ was entitled to discount the physician's opinion on the basis that it stood at odds with other record evidence (see Section **A**., *supra*). The administrative discussion of Dr. Mullally's treating records is both substantively and procedurally sound. In support of her conclusions, the ALJ cited *Cutlip v. Secretary of Health and Human Services,* 25 F. 3d 284 (6th Cir. 1984), correctly noting that she was "not bound by the treating physician's opinion where there is substantial medical evidence to the contrary." (Tr. 21). The ALJ observed that physical therapy notes suggested only a mild or moderate degree of limitation, contradicting the finding that Plaintiff was totally disabled (Tr. 21).

I further disagree that Dr. Bartone's July 2004 conclusions were invalidated by later imaging studies. While case law from this and other circuits favors the rejection of outdated medical records, those holdings are inapplicable here.[4] With the exception of Dr. Mullally's disability finding (discussed and rejected by the ALJ) none of the exam notes or imaging studies post-dating Dr. Bartone's assessment imply a greater degree of limitation than found in the July 2004 appraisal.

### C. The Hypothetical Question

Finally, Plaintiff argues that the ALJ's hypothetical question did not encompass all of his relevant limitations. *Plaintiff's Brief* at 16. He contends that the question failed to account for the fact that pain moderately limited his ability to concentrate for extended periods. *Id.*

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir. 1987)(internal citations omitted). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his

---

[4]*Hamblin v. Apfel*, 2001 WL 345798, *2 (6th Cir. 2001) (6th Cir. 2001), affirmed an ALJ's rejection of an "outdated" medical opinion in favor of a more recent appraisal with contradicting findings *See also Sayles v. Barnhart,* 2004 WL 3008739, 23 (N.D.Ill. 2004); *Rivera v. Barnhart,* 379 F.Supp.2d 599, 607 (S.D.N.Y.,2005)(Remand ordered based on the need for more recent information for the "clarification of discrepancies" between older records by both treating and state-hired physicians); *Olheiser v. Apfel,* 2000 WL 33340310, 4 (D.N.D. 2000) (Criticizing the ALJ's almost exclusive reliance on outdated records).

hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

The ALJ's hypothetical question, essentially identical to the RFC discussed in Section **B**, and supported by record evidence, does not present a basis for remand. Plaintiff, citing *Walker v. Barnhart*, 258 F. Supp 2d 693 (E.D. Mich 2003)(Battani, J.), also argues that the hypothetical limitations of "simple repetitive type tasks or unskilled work" fail to account for his moderate concentrational limitations as a result of pain. This argument is a novel, but unpersuasive twist on the familiar premise the hypothetical limitations such as "simple," and "routine," may fail to account for "moderate" concentrational deficiencies. *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007)(Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich. 2005)(Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir. 1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D. Or. 1999). *See Roe v. Chater,* 92 F.3d 672, 676-77 (8th Cir. 1996).

Plaintiff's argument fails for two reasons. First, because these cases refer to moderate concentrational limitations as determined by the Psychiatric Review Technique ("PRT") (a method of quantifying the impact of a mental disorder used by the SSA where an applicant alleges disability as a result of psychiatric impairments) they are inapplicable to the present case in which Plaintiff alleges only physical impairments. Second, in further contrast to the above cases in which the hypothetical question did not fully account for moderate concentrational limitations, here, the moderate limitations were actually incorporated into

hypothetical question verbatim ("moderate limitation in the ability to maintain concentration for extended periods") thus ensuring that the VE's job findings accurately reflected his degree of limitation (Tr. 280-281).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, and Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for further administrative proceedings.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
                                R. STEVEN WHALEN
                                UNITED STATES MAGISTRATE JUDGE

Dated: June 9, 2008

                        CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys
 and/or parties of record by electronic means or U.S. Mail on June 9, 2008.


                                S/Gina Wilson
                                Judicial Assistant